UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| AMERICAN ZURICH INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) Civil Action No. 6:24-CV-131-CHB ) ) |
| v. | ) **MEMORANDUM OPINION AND** ) **ORDER** |
| CATALYST RESOURCES, LLC, and COVOL FUELS NO. 3, LLC, | ) ) ) |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on American Zurich Insurance Company's Motion for Summary Judgment, [R. 24-1]. Catalyst Resources, LLC and Covol Fuels No. 3, LLC responded, [R. 26], and American Zurich replied, [R. 28]. The matter has been fully briefed and is ripe for review. For the reasons that follow, the Court will grant American Zurich's Motion for Summary Judgment.

**I.   BACKGROUND**

This suit arises from an insurance contract between American Zurich Insurance Company (hereinafter, "Plaintiff") and Catalyst Resources, LLC and Covol Fuels No. 3, LLC (hereinafter, collectively, "Defendants"). Plaintiff is an insurer. [R. 27-1, p. 10 (Policy)]. Defendants are in the coal business, and Covol Fuels No. 3, LLC is the sole member of Catalyst Resources, LLC. *Id.* at 10, 13, 41; [R. 1, ¶¶ 2–3].

Pursuant to the insurance contract between Plaintiff and Defendants (hereinafter, "the Policy," [R. 27-1]), Plaintiff agreed to provide workers' compensation and employers liability insurance to Defendants for a one-year period between December 31, 2022, and December 31,

- 1 -

2023 (hereinafter, the "policy period"). [R. 27, ⁋ 5 (Salgado Dec.); R. 27-1, p. 10 (Policy)].[1] The Policy established Defendants' premiums in two stages. At first, based on Defendants' own estimations as to their payroll and the type of work they expected to perform during the policy period, the Policy set an initial premium, called the "total estimated annual premium." [R. 27-1, pp. 10–11, 18 (Policy)]. But the Policy further specified that the total estimated annual premium was just that—"an estimate"—and noted the final premium would be determined after the Policy terminated based on the work Defendants actually performed during the policy period. *Id.* at 18. In order to determine the final premium, Plaintiff reserved the right under the Policy to conduct an audit. *Id.* And, if the final premium calculated was greater than the total estimated annual premium, Plaintiff reserved the right to collect the balance owed by Defendants. *Id.*

Defendants canceled the Policy on June 1, 2023. [R. 27, ⁋ 5 (Salgado Dec.)]. Afterwards, Plaintiff conducted an audit and determined that Defendants owed additional premiums. *Id.* at ⁋ 10; [R. 27-2, p. 2 (Audit Adjustments)]. Plaintiff alleges Defendants have since refused to pay those premiums. [R. 24-1, pp. 9–10; R. 27, ⁋⁋ 14–17, 26 (Salgado Dec.)]. Additionally, the policy requires Defendants to pay a deductible for submitted claims. [R. 27-1, p. 37 (Policy)]. Plaintiff further alleges that although it paid a claim during the policy period and thereafter issued invoices

---

[1] Confusingly, Plaintiff originally filed the Salgado Declaration at [R. 24-3] alongside Plaintiff's Motion for Summary Judgment at [R. 24-1], but Plaintiff failed to attach the exhibits referenced in the Salgado Declaration. Then, after apparently realizing this error—but only after Defendants had filed their Response brief—Plaintiff re-filed the Salgado Declaration along with its exhibits at [R. 27; R. 27-1–R. 27-12]. *See* [R. 28-1, ⁋ 9].

In the Kadian Declaration at [R. 28-1], Plaintiff explains that Defendants were not prejudiced by Plaintiff's failure to attach their exhibits until after Defendants filed their Response because "Defendants were provided with complete copies of these exact same exhibits on November 11, 2024, as part of [Plaintiff's] Request for Admissions." [R. 28-1, ⁋ 9]. The Court agrees that in light of Plaintiff's prior disclosure of these documents, Defendants were not prejudiced by Plaintiff's failure to attach them to its Motion for Summary Judgment. And, in any event, Defendants have filed no motion to strike the late-attached exhibits or indicated their objection to the documents through their Response. The Court is satisfied and will consider these exhibits in its analysis.

for the deductible owed, Defendants have not paid those invoices. [R. 24-1, pp. 10–11; R. 27, ¶¶ 16–25 (Salgado Dec.)].

As a result, Plaintiff sued, alleging Defendants breached the Policy terms in two ways: by failing to pay additional premiums and failing to pay the deductible owed. [R. 1, ¶¶ 31–39]. Plaintiff also brings claims for account stated, anticipatory repudiation, and unjust enrichment. *Id.* at ¶¶ 40–64. Plaintiff now seeks summary judgment based on Defendants' alleged failure to pay the additional premiums and deductible obligations under the Policy, arguing Defendants owe them $128,917.80 on the Policy premiums (including interest accrued through August 25, 2025) and $29,317.05 on the unpaid deductible (including interest accrued through August 25, 2025). [R. 27, ¶¶ 14–16, 21, 24–25 (Salgado Dec.)]. Defendants responded, generally contesting the accuracy of Plaintiff's audit and accounting practices based on alleged previous accounting mistakes by Plaintiff. [R. 26, pp. 2–3; R. 26-1, ¶¶ 7–12 (Gilmore Dec.)]. Plaintiff replied, providing support for the accuracy of its audit and accounting procedures and arguing that Defendants' unsupported assertions as to Plaintiff's "potential mistakes" are insufficient to avoid summary judgment. [R. 28, pp. 6–10]. The matter is therefore ripe for review.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment if it first finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Winkler*

---

[2] Plaintiff's Motion for Summary Judgement and Reply mistakenly cite to Kentucky law when discussing the summary judgment standard. *See* [R. 24-1, pp. 7–8; R. 28, p. 6]. This is incorrect. Instead, the federal summary judgment standard applies. *See* Fed. R. Civ. P. 56.

- 3 -

*v. Madison County*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson*, 477 U.S. at 256. That burden may be satisfied by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case for which he or she bears the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

Once the moving party satisfies this burden, the non-moving party thereafter must produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citation omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, the Court is not obligated to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

Further, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec.*, 475 U.S. at 587 (citation omitted).

### III.  ANALYSIS

"A federal court sitting in diversity applies the substantive law of the state in which it sits." *Lukowski v. CSX Transp., Inc.*, 416 F.3d 478, 484 (6th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). The Court will thus apply the substantive law of Kentucky.

### A.  Breach of Contract

"Under Kentucky law, 'to prove a breach of contract, the complainant must establish three things: 1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract.'" *Fifth Third Bank v. Lincoln Fin. Sec. Corp.*, 453 F. App'x 589, 601 (6th Cir. 2011) (quoting *Metro Louisville/Jefferson Cnty. Gov't v. Abma,* 326 S.W.3d 1, 8 (Ky. Ct. App. 2009)). Defendants concede that "a contract was made between [Plaintiff] and Defendants." [R. 26, p. 2]. Defendants thus dispute only the second and third components of a breach of contract claim, drawing into question both whether the contract was breached and the amount of damages resulting from any potential breach. *See id.* at 2–3.

First, Plaintiff alleges Defendants breached the Policy by failing to pay additional premiums owed. [R. 24-1, pp. 6–7]. In support, Plaintiff attaches the Policy along with several affidavits and documents. [R. 27; R. 27-1–R. 27-12]. Plaintiff points to the Policy terms, which provide the initial premium is based on an estimate, but the Policy is subject to a post-expiration audit based on the actual exposure during the effective dates of coverage. [R. 27-1, pp. 10, 18 (Policy)]. Accordingly, the Policy outlines that the "final premium" owed to Plaintiff is "determined after th[e] policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy." *Id.* at 18; [R. 27, ¶ 9 (Salgado Dec.)]. Additionally, "[i]f the final premium is more than the premium [Defendants] paid to [Plaintiff], [Defendants] must pay [Plaintiff] the balance." *Id.* [R. 27, ¶ 9 (Salgado Dec.)].

Plaintiff performed a post-expiration audit demonstrating Defendants owed $154,134.00 in additional premiums. [R. 27, ¶ 10 (Salgado Dec.); R. 27-12 p. 2 (Outstanding Premiums Detail); R. 24-4, ¶¶ 10–14 (Berrenson Dec.); R. 24-9, p. 5, No. 9 (Exh. A to Kadian Dec.)]; *see also* [R. 24-1, pp. 9–10; R. 26-3, p. 3 (discussing "the audit [Plaintiff] conducted" and contesting "the veracity of the additional premiums")]. Plaintiff notes that on January 29, 2024, Defendants paid $38,533.50 toward additional premiums but thereafter failed to pay any additional sums. [R. 27, ¶¶ 11–12, 26 (Salgado Dec.); R. 27-12, p. 2 (Outstanding Premiums Detail)]. Accordingly, Plaintiff calculated Defendants owe $115,600.50 in premiums, [R. 27, ¶ 12 (Salgado Dec.); R. 27-12, p. 2 (Outstanding Premiums Detail)], plus $13,317.30 in statutory interest, [R. 27, ¶ 13 (Salgado Dec.)], for a total of $128,917.80 owed through August 25, 2025. *Id.* at ¶ 14.

Plaintiff also alleges Defendants breached the Policy by failing to pay a deductible owed after Plaintiff provided coverage for Defendants. [R. 24-1, p. 7; R. 27, ¶¶ 18–26 (Salgado Dec.)].

- 6 -

The Policy obligates Defendants to pay a $500,000 deductible per claim submitted. [R. 27-1, p. 37 (Policy)].

Defendants submitted Claim No. 2240460588 with a date of loss of April 19, 2023. [R. 27, ¶ 18 (Salgado Decl.); R. 27-3, p. 5; R. 24-9, p. 6, No. 16 (Exh. A to Kadian Dec.)]. Plaintiff provided coverage for the claim, [R. 27, ¶ 19 (Salgado Dec.)], and thereafter issued invoices to Defendants, for the deductibles owed under Claim No. 2240460588. [R. 27, ¶ 21 (Salgado Dec.); R. 27-3, p. 5; R. 27-4, p. 5; R. 27-5, p. 5; R. 27-6, p. 5; R. 27-7, p. 5; R. 27-8, p. 5; R. 27-9, p. 5; R. 27-10, p. 5; R. 27-11, p. 5; R. 27-12, p. 2 (Outstanding Premiums Detail)]. Nevertheless, Plaintiff argues Defendants failed to pay those invoices. [R. 27, ¶ 23 (Salgado Dec.); R. 27-12, p. 2 (Outstanding Premiums Detail)]. These unpaid invoices total $26,970.66, plus $2,346.39 in statutory interest, for a total of $29,317.05 as of August 25, 2025. [R. 27, ¶¶ 21, 24 (Salgado Dec.); R. 27-12, p. 2 (Outstanding Prems. Detail)]. All totaled, Plaintiff contends Defendants owe $158,234.85 through August 25, 2025 for both breaches. [R. 27, ¶ 25 (Salgado Dec.)]. Plaintiff argues there are no genuine issues of material fact on the issues of breach and damages.

In response, Defendants submit the affidavit of N. Craig Gilmore, a principal of Defendants. [R. 26, pp. 2–3; R. 26-1 (Gilmore Aff.)]. Gilmore points to a previous accounting mistake made by Plaintiff, for which Defendants received a large refund, as well as Plaintiff's production of two identical invoices during the audit in question which "belies [Plaintiff's] credibility" and, in his view, indicates "it is very likely Plaintiff has made yet another auditing mistake." [R. 26-1, ¶¶ 7, 11–12 (Gilmore Aff.); R. 25, p. 3 (arguing Plaintiff has "no explanation for issuing two identical invoices)]. Gilmore continues that "to the best of my knowledge, no audit review was ever ordered or conducted by Plaintiff," and therefore, he has "no confidence in the numbers provided to [him] by Plaintiff." [R. 26-1, ¶¶ 10, 12 (Gilmore Aff.)]. Taken together, this

"suggests [Plaintiff] has, once again, made mistakes with regard to its audits." [R. 26, p. 3]; *see also* [R. 26-1, ¶¶ 7–12 (Gilmore Aff.)].

The Court finds this evidence insufficient to produce a genuine issue of material fact as to either breach or damages. First and generally, Defendants make no contention that the terms of the policy as represented by Plaintiff are inaccurate, and indeed its terms are clear. *See generally* [R. 26; R. 26-1 (Gilmore Aff.); R. 27-1 (Policy)]. The Policy carried a $500,000 deductible and permitted Plaintiff to conduct a post-expiration audit and to charge additional premiums based on the actual payroll and type of work performed during the policy period. Defendants do not contest this, nor do they point to any evidence whatsoever of a potential error in *this* audit involving either the premium calculation or the deductible owed. Rather than addressing Plaintiff's evidence concerning *this* audit and pointing to actual errors related to the premium and deductibles at issue *here*, Defendants instead point to an alleged accounting mistake from April 17, 2024, that resulted in an overcharge to Defendants of approximately $157,052.26, which was later refunded. [R. 26-1, ¶ 7 (Gilmore Aff.)]. But the relevant policy period at issue here is from December 31, 2022, until Defendants canceled the policy on June 1, 2023—approximately one year before the purported accounting error. [R. 27-1, p. 10 (Policy); R. 27-2, p. 2 (Audit Adjustments)]. Plaintiff provides ample evidence to support the accuracy of its premium audit. [R. 27, ¶¶ 10–11 (Salgado Dec.); R. 24-4, ¶¶ 11–14 (Berrenson Dec.); R. 24-9, p. 5, No. 9 (Exh. A to Kadian Dec.); R. 27-2, p. 2 (Audit Adjustments)].

Moreover, communications from Defendants' insurance broker undercut their argument that the audit was flawed. As mentioned, the audit revealed Defendants owed $154,134.00 in additional premiums. [R. 27, ¶ 10 (Salgado Dec.)]. On January 26, 2024, Defendants' broker e-mailed a representative of Plaintiff and explained that "the insured will be making a payment of

- 8 -

$38,533.50 that will be wired to Zurich on Monday. They cannot pay the full amount, but will be sending payments in quarterly installments." [R. 28-9, p. 7; R. 28-8, ¶¶ 4–5 (Plascak Aff.)]. On January 29, 2024, Defendants did in fact pay $38,533.50 (which equals 25% of the total audit balance). [R. 27, ¶ 11 (Salgado Dec.); R. 27-12, p. 2 (Outstanding Premiums Detail)]; *see generally* [R. 26]. The accuracy of the audit or premiums owed was never raised. [R. 28-8, ¶¶ 4–5 (Plascak Aff.)]. The partial payment was based instead on Defendants' financial condition and request to pay the balance in installments. *Id.*

Defendants' other argument related to the two identical invoices fares no better. Plaintiff's Reply and supporting affidavit explain that the invoices pertained to weekly wages owed to an injured worker, stating that "[f]or two months, the injured workers' wages were the only expenses incurred and, therefore, those invoices were for the same amount and are accurate." [R. 28, p. 9; R. 28-7, ¶ 7 (Second Salgado Dec.)]. Specifically, the injured worker "was entitled to weekly wages in the amount of $662.04 which equates to a monthly amount of $2,648.16," and, accordingly, Plaintiff "invoiced Defendants for their deductible obligation related to this monthly expense, which includes $52.96 in claim handling fees, for a total of $2,701.12." [R. 28-7, ¶ 7 (Second Salgado Dec.)]. This evidence satisfies the Court.[3]

"The mere existence of a scintilla of evidence in support of the [non-moving party's position]," which is, at most, all Defendants have shown here, "will be insufficient; there must be

---

[3] Defendants make the bare-bones argument that Plaintiff "violated the Consumer Protection Act and has breached its duties under Kentucky law and in the contract by and between AZIC and Defendants" through Plaintiff's production of two identical invoices during this suit. [R. 26, p. 3]. The Court notes that Defendants failed to formally assert any counterclaim pursuant to Rule 13(b), and declines to address this undeveloped argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–34 (1st Cir. 1995)) (internal quotation marks omitted)); *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (finding "unfair surprise" would result if a nonmoving party were permitted to raise new claims in opposition to summary judgment).

evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Even drawing all reasonable inferences in the favor of Defendants as the nonmoving parties, the Court finds that no reasonable factfinder could rule for Defendants regarding breach or damages.

Defendants' Response makes two additional arguments the Court will briefly address. First, Defendants point to Plaintiff's "refus[al] to work with Defendants to establish a reasonable and equitable [repayment] plan" as a defense, contending that "it is clearly in [Plaintiff's] best interest to work with Defendants on a payment plan rather than to pursue [this] legal action." [R. 26, pp. 3–4]. This argument is irrelevant. Defendants point to no contractual covenant that requires such negotiations or prevents Plaintiff from suing, and instead "seek[s] a 'free pass' for their breach [without] show[ing] Plaintiff[] agreed to give up or abandon their right to pursue a claim for breach" in the first place. *Pal v. Deliberato*, No. 1:25-CV-01233, 2025 WL 904458, at *4 (N.D. Ohio Mar. 25, 2025).

Second, Defendants argue that Plaintiff "filed its Motion for Summary Judgment prematurely," since Plaintiff "has conducted little to no discovery." [R. 26, pp. 4–5]. In support, Defendants cite two state court cases in which courts reversed grants of summary judgment on appeal based on the case's prematurity. *Id.* (citing *Roberson v. Lampton*, 516 S.W.2d 838 (Ky. 1974); *Lickteig v. Schwab*, 2014 WL 4177442, at * 4–5 (Ky. Ct. App. Aug. 22, 2014)). Plaintiff vehemently objects to Defendants' "patently false" assertion and characterizes Defendants as having "intentionally obstructed [Plaintiff's] discovery and decided not to conduct any of their own." [R. 28, pp. 10–12]. As Plaintiff notes, a scheduling order was entered in this case setting a discovery deadline of July 1, 2025, and a dispositive motions deadline of September 1, 2025. *Id.* at 10–11; [R. 19]. Because Plaintiff complied with those deadlines, Plaintiff argues "its summary

- 10 -

judgment motion cannot be 'premature.'" [R. 28, p. 11]. Plaintiff also points out that Defendants stated on March 25, 2025, that they "had completed their search for documents and information and 'due to such a high employee turnover, no employees with knowledge of the requested facts and circumstances remain.'" *Id.* at 11 (citing [R. 28-5, p. 3]). Finally, Plaintiff argues that Defendants' cited cases are irrelevant.

The Court agrees with Plaintiff. The Court's scheduling order at [R. 19] clearly reflects the deadlines outlined by Plaintiff: "All fact discovery shall be completed on or before July 1, 2025"; "All expert discovery shall be completed on or before July 1, 2025"; and "No later than September 1, 2025, counsel for the parties shall file all dispositive motions." [R. 19, ¶¶ 4–5]. Defendants never requested modifications to the scheduling order and apparently conducted limited discovery at best. [R. 24-5, ¶¶ 5–8 (Kadian Dec.); R. 28-1, ¶¶ 5–8 (Second Kadian Dec.); R. 28-6, pp. 2–3]. Defendants cannot now complain that summary judgment is premature when they failed to conduct discovery or request an extension of time in which to do so. *See Parrish v. Dollar General Corp.*, No. 3:14-CV-227-CHL, 2016 WL 742925 (W.D. Ky. Feb. 24, 2016) ("[T]he Court's scheduling orders[] must be adhered to by all parties to civil litigation."). Additionally, Defendants' cited state court cases, *Robinson* and *Licktieg*, to the extent the Court considers them, are disanalogous to these facts; in the former, the trial court granted summary judgment in the *defendants'* favor despite the defendants' failure to engage in discovery, 516 S.W. at 839–40, while in the latter, the trial court granted summary judgment despite "no scheduling order in place," "no pretrial order setting forth a discovery deadline," and "no date for trial," in addition to one party's counsel experiencing health complications, going on maternity leave, and taking no depositions. 2014 WL 4177442 at *2. Defendants have had plenty of time in which to conduct discovery and chose not to; their failure will not prevent an award of summary judgment for Plaintiff.

### B. Account Stated

Plaintiff also brings an account stated claim. *See* [R. 24-1, pp. 14–16]. However, given the Court's grant of summary judgment on Plaintiff's breach of contract claim, the Court need not address this claim. *See Harris v. Edward J. Miller & Son, Inc.*, 453 S.W.2d 739, 740 (Ky. 1970) ("[W]hen a plaintiff sues on an account stated[,] his claim must be proved exactly as alleged[,] and *there can be no recovery on another theory*." (emphasis added)).

### C. Anticipatory Repudiation

Confusingly, Plaintiff brings both a breach-of-contract claim and an anticipatory breach claim. *See* [R. 24-1, pp. 8–12, 16–17]. But the Restatement of Contracts provides that a party cannot bring both a breach-of-contract claim and an anticipatory breach claim. Restatement (Second) of Contracts § 253 cmt. a (A.L.I. 1981) ("If there is a breach by non-performance, in addition to [anticipatory breach,] the breach is not one by repudiation alone and the rules [governing breach by non-performance] rather than those [governing anticipatory breach] apply."). Accordingly, the Court need not address Plaintiff's anticipatory breach argument.

### D. Unjust Enrichment

"[U]nder Kentucky law, 'the doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed.'" *Id.* (quoting *Nash-Finch Co. v. Casey's Foods, Inc.*, 762 F. App'x 218, 225 (6th Cir. 2018)). "Instead, where an express contract exists, parties must resolve disputes through a breach of contract claim." *Id.* (citing *Nash-Finch*, 762 F. App'x at 225). Because the Court has already awarded summary judgment in Plaintiff's favor as to its breach of contract claim, the Court need not address Plaintiff's unjust enrichment claim.

### E. Affirmative Defenses

An affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Defense, Black's Law Dictionary* (12th ed. 2024). Plaintiff's Motion for Summary Judgment argues that Defendants failed to prove the affirmative defenses asserted in their Answer. [R. 24-1, pp. 18–19]. Defendants' Response makes no attempt to argue otherwise, [R. 26], and accordingly, Defendants have failed to raise a genuine issue of material fact to prevent summary judgment in Plaintiff's favor.

## IV. CONCLUSION

For the above-stated reasons, the Court will grant summary judgment to Plaintiff as to its breach of contract claim for both the unpaid premiums and the unpaid deductible. Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment, [R. 24-1], is **GRANTED**.

2. **Within seven (7) days** of the entry of this Order, Plaintiff **SHALL** file a Report into the record providing (1) an updated damages calculation, (2) a calculation of per diem interest, and (3) citations to authority regarding whether interest is calculated under state or federal law. Defendants **MAY** file a response **within seven (7) days** of the filing of Plaintiff's Report. Upon review of the additional submissions, the Court will award damages and enter Judgment

This the 9th day of March, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY